UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,          Case Number 02-80307

v.          Honorable David M. Lawson

ELEES LANTON,

          Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Elees Lanton has filed a motion asking the Court to reduce his sentence under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Lanton has served less than a year of a 51-month prison sentence for possessing a firearm as a convicted felon. The commencement of his sentence was delayed because he fled after he was sentenced, committed another crime, and served a lengthy sentence in state custody. Lanton argues that a sentence reduction is justified by his medical conditions (obesity, hypertension, high cholesterol, and sickle cell disease) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. The government concedes that Lanton's medical conditions amount to extraordinary and compelling reasons for release, but it maintains that he would be a threat to public safety if set free. Although Lanton's medical ailments coupled with the threat of a COVID-19 infection may amount to "extraordinary and compelling reasons [to] warrant such a reduction," as section 3582(c)(1)(A)(i) requires, consideration of the factors in 18 U.S.C. § 3553(a) do not favor early release. Because Lanton has not demonstrated that immediate release is appropriate or that he qualifies for release under any other provision of section 3582(c)(1), the motion will be denied.

I.

In February 2001, Detroit police officers attempted to stop a vehicle that had been reported stolen. Defendant Elees Lanton, who was driving the car, sped off, and the officers chased after him until he lost control and hit a curb. He then fled on foot and tossed a pistol as he ran. Lanton, who had a significant criminal history at the time, eventually pleaded guilty to possession of a firearm by a prohibited person in violation 18 U.S.C. § 922(g) in October 2002. On May 8, 2003, the Honorable Avern Cohn sentenced Lanton to 51 months in prison. Judge Cohn allowed Lanton to self-report, but he absconded, and Judge Cohn then issued an arrest warrant on July 16, 2003.

Lanton managed to evade police for about a month. In August 2003, he and two others robbed a hotel at gunpoint. The three led police on a high-speed chase until they crashed into a pole, tried to flee on foot, and were apprehended. Lanton denied responsibility for the crime, contending that he was asleep in the car during the robbery. Nevertheless, a jury convicted him, and he was sentenced to a lengthy prison term by a state court judge. Lanton was granted parole on July 21, 2020 after serving 17 years in custody. When released, he was taken into custody by the U.S. Marshalls to serve his 2003 federal sentence.

Lanton currently is held at USP Canaan, a high-security penitentiary in Pennsylvania that houses about 1,200 inmates. Public records of the Bureau of Prisons (BOP) indicate that the defendant is scheduled to be released from prison on March 2, 2024. Lanton is 54 years old and has hypertension, high cholesterol, sickle cell disease, and obesity, with a body mass index of about 36.8. He also says that he suffers from "respiratory abnormality," but he does not elaborate on this condition, and his medical records do not indicate any respiratory ailments.

The defendant submitted a request for compassionate release to the Warden of USP Canaan, which was denied on January 12, 2021. He then filed the present motion for compassionate release on March 15, 2021.

The most recent data disclosed by the BOP indicates that there are no active coronavirus cases among inmates and one among staff at USP Canaan. In addition, 296 inmates and 75 staff members previously were diagnosed and now have recovered. Reports indicate that no inmates or staff have died from the virus. *See* https://www.bop.gov/coronavirus/. The BOP also reports that it fully inoculated 164 staff members and 843 inmates at the facility. *Ibid.* It is unclear whether the defendant has been vaccinated.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. §

3582(c)(1)(A)(i), (ii)).  Lanton relies on subparagraph (i) of the statute.  Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps.  *First*, consider whether "extraordinary and compelling reasons warrant such a reduction."  *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."  *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute.  The commentary adds gloss, which does not have the force of law.  *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").  That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP.  *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further.  In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'"  984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-

32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.* However, the defendant still must satisfy the other requirements, and his "failure to meet any one of those criteria" will result in the denial of his motion. *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021).

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Addressing the first element — extraordinary and compelling reasons — Lanton argues that his pre-existing medical conditions consisting of hypertension, high cholesterol, sickle cell disease, "respiratory abnormality," and obesity (BMI 36.8) render him vulnerable to complications from the highly-contagious novel coronavirus. In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put him at risk of contracting the virus)." 980 F.3d at 1102 n.6.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person.

COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain personal characteristics face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).

The government concedes that the defendant satisfied the first requirement for compassionate release due to his obesity, a condition that the CDC considers significantly associated with severe illness from COVID-19. *Scientific Evidence for Conditions that Increase Risk of Severe Illness*, Ctrs. for Disease Control and Prevention (May 12, 2021), https://bit.ly/34aDRY6; *People with Certain Medical Conditions*, Centers for Disease Control & Prevention (May 13, 2021), https://bit.ly/32UK6is ("The risk of severe COVID-19 illness increases sharply with elevated BMI."). And although the nature of Lanton's "respiratory abnormality" is not clear from the record, the CDC also recognizes sickle cell disease as a condition that "can make [an individual more likely to get severely ill from COVID-19." *People with Certain Medical Conditions*, *supra*.

The defendant's medical conditions, in combination with the coronavirus pandemic, suffices to establish extraordinary and compelling reasons for his release.

C.

Despite the defendant's satisfactory showing of extraordinary medical risk, early release is not justified in this case because the relevant section 3553(a) factors weigh heavily against discharging him into the community.

The government no longer argues that compliance with the Sentencing Commission's policy statement on compassionate release is mandatory, which was based on one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument is a dead letter after the Sixth Circuit's decision in *Jones*, 980 F.3d at 1109 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion."); *Elias*, 984 F.3d at 519-20 (same).

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

The Court's "initial balancing of the § 3553(a) factors during [the defendant's] sentencing" is presumed "to remain [] an accurate assessment as to whether those factors justify a sentence reduction." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021). The defendant, therefore, must "make a compelling case as to why the court's § 3553(a) analysis would be different if conducted today." *Ibid.*

Lanton's crime is serious, and the manner in which it was committed indicates a high degree of dangerousness. Lanton led police on a car chase in a stolen car before losing control and fleeing on foot, recklessly throwing a pistol as he ran. And his criminal history extends back almost 40 years, beginning when he was found with a loaded handgun in high school. Moreover, he committed his most violent offense — armed robbery — while on the run from serving the present sentence that he wants reduced. The BOP determined that Lanton poses a high risk of recidivism.

Not only does the nature of the offense and Lanton's criminal history weigh against his release, but so does the fact that he did not serve a significant portion of his sentence. Lanton served only about ten months of his total sentence. Although the defendant requests leniency due

to the fact that his conviction is almost 20 years old, the only reason for its age is that he was serving time for a crime he committed when he should have been serving his federal sentence. His request amounts to a plea for the Court to reward him for absconding from federal authorities and committing a violent crime by reducing the sentence he tried to avoid by violating the trust Judge Cohn placed in him when he allowed him to self-report for that sentence. Although Lanton maintained clear conduct for the past six months and completed several educational and vocational programs, releasing him now would hardly promote respect for the law, and it may undermine the goals of both specific and general deterrence, which are of particular concern with a defendant who has demonstrated his disinclination to abide by society's rules of conduct.

III.

Lanton has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 27) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: May 17, 2021